[No. B227444. Second Dist., Div. One. July 21, 2011.]

KATHERINE GONZALEZ, a Minor, etc., Plaintiff and Respondent, v. EDWARD CHEN, Defendant; NATHANIEL J. FRIEDMAN, Objector and Appellant.

<span style="visibility:hidden">REDACTED</span>

COUNSEL

Nathaniel J. Friedman, in pro. per.; and Barton A. Friedman for Objector and Appellant.

No appearance for Plaintiff and Respondent.

OPINION

**MALLANO, P. J.**—A minor's attorney filed this appeal on his own behalf, dissatisfied with the attorney fees he was awarded in an order approving a compromise in a medical malpractice case. We reverse and remand so the trial court may award fees pursuant to the applicable California rule of court, not the *local* court rule that was preempted at the time of the award. In addition, the trial court was not required to award the maximum contingency fees allowed under the Medical Injury Compensation Reform Act of 1975 (MICRA) (Bus. & Prof. Code, § 6146, subd. (a)).

## I

### BACKGROUND

The allegations and facts in this appeal are taken from the complaint, the petition to approve a minor's compromise, and the resulting order.

### A. *Complaint*

The operative complaint alleged as follows. In June 2009, Katherine Gonzalez, a minor, filed this action against Edward Chen, M.D., for injuries arising out of the way in which she was delivered at birth. In particular, based on Katherine's size, Dr. Chen should have performed a cesarean section instead of a vaginal delivery. His failure in that regard caused Katherine to suffer shoulder dystocia at birth which later developed into Erb's palsy, or paralysis, of the right arm. Katherine's mother also alleged her own claim for medical malpractice.

### B. *Petition to Approve Minor's Compromise*

Through mediation, the parties reached a settlement of $200,000. On July 7, 2010, Katherine's attorney, Nathaniel J. Friedman, filed the standard petition to approve a minor's compromise. (See Judicial Council Forms, form MC-350.) He sought (1) $1,975 to cover medical liens, (2) $31,000 in costs,

(3) $10,000 in damages for Katherine's mother, and (4) $61,666 in attorney fees based on the *maximum* contingency limitations set forth under MICRA (Bus. & Prof. Code, § 6146, subd. (a)). That would have left $95,359 for Katherine. Friedman indicated on the petition that he and his client had the "[c]ustomary medical malpractice contingency fee agreement."

At the July 15, 2010 hearing on the petition, the trial court remarked: "The bottom line is I think the amount of the settlement is low. Here we have a child, two years old that will have a permanent lifetime injury as a result of . . . dystocia that [she'll have] for the rest of her life. . . . The settlement is some $200,000 of which, after fees have been paid, the costs have been paid, money to the mother, the child is going to net about $95,000 for a lifetime injury." Friedman pointed out that Katherine was scheduled for surgery at Children's Hospital in early September. Opposing counsel stated that "shoulder dystocia, Erb's palsy" cases generally settle for $125,000 to $175,000. He continued: "This is the most I have ever paid on [such a] case, and I think that the odds favor the defense winning this case at trial." Katherine's father, her guardian ad litem, said that the settlement was acceptable to him and his wife. The court took the matter under submission.

By order dated July 23, 2010, the trial court approved the compromise, awarded costs in the amount of $29,000, medical expenses of $1,975, damages of $10,000 to Katherine's mother, and $50,000 in attorney fees. The fee award was calculated pursuant to a local court rule that typically required fees to be fixed at 25 percent of the total recovery. (See Super. Ct. L.A. County, Local Rules, former rule 10.79(c)(3).)[1]

The trial court initially ordered that the funds for Katherine, $109,025, be placed in Friedman's trust account at Union Bank in the form of a special needs trust. In a subsequent order dated August 19, 2010, the trial court directed Friedman to transfer the $109,025 to City National Bank and set up a blocked interest-bearing account with Katherine's father as the trustee. The order recited that "[t]he blocked account belongs to the minor." Any withdrawals before Katherine reached age 18 required a further written order of the court. When Katherine turned 18, the bank was to release the funds, plus interest, to Katherine without an additional order.

At the time of the fee award, California Rules of Court, rule 7.955(d) (rule 7.955) expressly preempted all local rules concerning attorney fees awarded

---

[1] The local rule stated: "Except where good cause is shown, the attorney's fees shall not exceed an amount equal to twenty-five percent (25%) of the gross proceeds of settlement, or, if applicable, the amount determined under Business and Professions Code section 6146[, part of MICRA], *whichever is less*." (Super. Ct. L.A. County, Local Rules, former rule 10.79(c)(3), italics added.)

in ruling on a petition to approve a minor's compromise. That rule states: "The Judicial Council has preempted all local rules relating to the determination of reasonable attorney's fees to be awarded from the proceeds of a [minor's] compromise, settlement, or judgment . . . . No trial court, or any division or branch of a trial court, may enact or enforce any local rule concerning this field . . . . All local rules concerning this field are null and void . . . ." Rule 7.955(d) went into effect on January 1, 2010 (see Deering's Ann. Codes, Rules (2011 supp.) foll. rule 7.955(d), p. 31)—more than six months before the trial court awarded attorney fees. On September 9, 2010, Friedman filed a notice of appeal, designating himself as the sole appellant. The local rule was repealed effective July 1, 2011.

## II

## DISCUSSION

Whether we review the trial court's decision de novo or for an abuse of discretion, we reach the same conclusion.

Friedman seeks an additional $11,666 in fees pursuant to Business and Professions Code section 6146, subdivision (a). That statute, part of MICRA, provides: "An attorney shall not contract for or collect a contingency fee for representing any person seeking damages in connection with an action for injury or damage against a health care provider based upon such person's alleged professional negligence in excess of the following limits: [¶] (1) Forty percent of the first fifty thousand dollars ($50,000) recovered. [¶] (2) Thirty-three and one-third percent of the next fifty thousand dollars ($50,000) recovered. [¶] (3) Twenty-five percent of the next five hundred thousand dollars ($500,000) recovered. [¶] (4) Fifteen percent of any amount on which the recovery exceeds six hundred thousand dollars ($600,000). [¶] The limitations [set forth above] shall apply regardless of whether the recovery is by settlement, arbitration, or judgment, or whether the person for whom the recovery is made is a responsible adult, an infant, or a person of unsound mind."

We reject Friedman's assertion that he is automatically entitled to the maximum contingency percentages allowed under MICRA, assuming he used them in his retainer agreement with Katherine. MICRA establishes *caps* on a recovery, not guarantees. (See *Roa v. Lodi Medical Group, Inc.* (1985) 37 Cal.3d 920, 931–932 & fn. 8 [211 Cal.Rptr. 77, 695 P.2d 164].) Rather, rule 7.955 governs the determination of the award. The preface to that rule provides: "(1) In all cases [involving the compromise of a pending action to which a minor, a person with a disability, or a conservatee is a party], unless the court has approved the fee agreement in advance, the court must use a

reasonable fee standard when approving and allowing the amount of attorney's fees payable from money or property paid or to be paid for the benefit of a minor or a person with a disability. [¶] (2) The court must give consideration to the terms of any representation agreement made between the attorney and the representative of the minor or person with a disability and must evaluate the agreement based on the facts and circumstances existing at the time the agreement was made, except where the attorney and the representative of the minor or person with a disability contemplated that the attorney's fee would be affected by later events." (Rule 7.955(a).)

Rule 7.955 goes on to say: "Factors the court may consider in determining a reasonable attorney's fee [¶] In determining a reasonable attorney's fee, the court may consider the following nonexclusive factors: [¶] (1) The fact that a minor or person with a disability is involved and the circumstances of that minor or person with a disability. [¶] (2) The amount of the fee in proportion to the value of the services performed. [¶] (3) The novelty and difficulty of the questions involved and the skill required to perform the legal services properly. [¶] (4) The amount involved and the results obtained. [¶] (5) The time limitations or constraints imposed by the representative of the minor or person with a disability or by the circumstances. [¶] (6) The nature and length of the professional relationship between the attorney and the representative of the minor or person with a disability. [¶] (7) The experience, reputation, and ability of the attorney or attorneys performing the legal services. [¶] (8) The time and labor required. [¶] (9) The informed consent of the representative of the minor or person with a disability to the fee. [¶] (10) The relative sophistication of the attorney and the representative of the minor or person with a disability. [¶] (11) The likelihood, if apparent to the representative of the minor or person with a disability when the representation agreement was made, that the attorney's acceptance of the particular employment would preclude other employment. [¶] (12) Whether the fee is fixed, hourly, or contingent. [¶] (13) If the fee is contingent: [¶] (A) The risk of loss borne by the attorney; [¶] (B) The amount of costs advanced by the attorney; and [¶] (C) The delay in payment of fees and reimbursement of costs paid by the attorney. [¶] (14) Statutory requirements for representation agreements applicable to particular cases or claims." (Rule 7.955(b), boldface omitted.) An attorney seeking fees must submit a declaration addressing each of the foregoing factors. (Rule 7.955(c).)

Here, Friedman did not submit a declaration addressing the 14 factors. His declaration stated he had been practicing law for 48 years, specializing in medical malpractice for 35 years; he had obtained "uncounted" seven-figure verdicts, arbitration awards, and settlements; and opposing counsel in the case had commented on the unusual size of the settlement. The record indicated that Friedman had spent 61 hours on the matter and that another, less experienced attorney had spent 67.5 hours assisting him. The second attorney

did not submit a declaration, and Friedman's declaration disclosed no information about him. The attorneys' hours were broken down by task.

■ The Advisory Committee comment to rule 7.955 states: "This rule requires the court to approve and allow attorney's fees in an amount that is reasonable under all the facts and circumstances, under Probate Code section 3601.[2] The rule is declaratory of existing law concerning attorney's fees under a contingency fee agreement when the fees must be approved by the court. The facts and circumstances that the court may consider are discussed in a large body of decisional law under section 3601 and under other statutes that require the court to determine reasonable attorney's fees. The factors listed in rule 7.955(b) are modeled after those provided in rule 4-200 of the Rules of Professional Conduct of the State Bar of California concerning an unconscionable attorney's fee, but the advisory committee does not intend to suggest or imply that an attorney's fee must be found to be unconscionable under rule 4-200 to be determined to be unreasonable under this rule.

"The rule permits, but does not require, the court to allow attorney's fees in an amount specified in a contingency fee agreement. The amount of attorney's fees allowed by the court must meet the reasonableness standard of [Probate Code] section 3601 no matter how [it is] determined." (Advisory Com. com., Deering's Ann. Codes, Rules, *supra*, foll. rule 7.955, p. 31.)

We emphasize the important role a trial court plays in awarding attorney fees in a minor's compromise. For instance, attorney fees awarded pursuant to a "prevailing party" provision in a statute or contract are paid by the *other* side. In contrast, attorney fees in a minor's compromise come out of, and therefore reduce, the minor's recovery. The defendant in a medical malpractice case has no interest in how the settlement proceeds are allocated. Once the malpractice carrier has reached a settlement figure approved by the court, the health care provider is out of the picture. Further, the minor's guardian ad litem, often a relative, is rarely skilled in the law and usually depends on the minor's attorney for advice. If the minor's attorney argues, as he did here, that he is entitled to additional attorney fees under MICRA, the guardian ad litem may not even question the argument. The trial court itself must develop and resolve any counterarguments on behalf of the minor, lest the attorney receive an excessive award of fees.

In this appeal, one position has been presented—Friedman's—and one brief has been filed—his opening brief. On the notice of appeal, Friedman identified himself as the sole appellant and listed his client on the proof of

---

[2] The Probate Code states that, in approving a minor's compromise, the trial court shall award reasonable attorney fees "from the money or other property to be paid or delivered for the benefit of the minor." (Prob. Code, § 3601, subd. (a); see *id.*, § 3600, subd. (a)(2).)

service as having been served as an "interested party"; he did the same thing on other appellate documents. No one has opposed Friedman's arguments. To be blunt, a victory for Friedman would come at the expense of the minor. Indeed, at oral argument, Friedman's colleague admitted that Friedman's interest in attorney fees was adverse to his client's interest in the settlement proceeds, arguing that we, as an appellate court, had no obligation to "look out" for the minor. We disagree. Like the trial court, we must independently research Friedman's arguments to determine their validity. Otherwise, the interests of the minor may not be adequately represented and could be overlooked.

If, on remand, Friedman seeks *appellate* attorney fees, then, once again, the trial court will be in the position of protecting the minor's interests vis-à-vis the interests of the minor's attorney. (See Cal. Rules of Court, rule 3.1702(a), (c) [request for appellate attorney fees to be presented to trial court on remand].) Although Friedman has indicated he will seek appellate attorney fees, he has not cited any authority supporting that request. It also appears that Friedman was self-represented on appeal. As an attorney, he is not entitled to attorney fees for work he or an associate performed on the matter. (See *Trope v. Katz* (1995) 11 Cal.4th 274 [45 Cal.Rptr.2d 241, 902 P.2d 259].)

■ When a minor's attorney plans to appeal an award of attorney fees or is likely to seek additional attorney fees on remand and a contingency fee agreement must be considered, "a conflict of interest necessarily exists between the claimants and their attorneys who both seek to maximize their own percentage of an award." (*In re Vioxx Products Liability Litigation* (E.D.La. 2009) 650 F.Supp.2d 549, 560.) "The primary concern regarding contingency fees is that they create conflicts of interest between attorneys and clients which may affect an attorney's diligence and judgment." (*Wallace on Behalf of Northeast Utilities v. Fox* (D.Conn. 1998) 7 F.Supp.2d 132, 136; see generally *Roa v. Lodi Medical Group, Inc., supra*, 37 Cal.3d at pp. 928–930.) Thus, a minor's attorney may find it advisable to resolve any potential or actual conflicts of interest by explaining the appeal to the guardian ad litem *before* filing it. (See, e.g., Rules Prof. Conduct, rule 3-300.)

■ In sum, the trial court must redetermine the award of attorney fees under California Rules of Court, rule 7.955, not a local rule or MICRA. Accordingly, we reverse the prior award and remand the case for further proceedings. We express no opinion on the outcome.

## III

## DISPOSITION

That portion of the "Order Approving Compromise of Pending Action" awarding $50,000 in attorney fees is reversed, and, on remand, the trial court shall award attorney fees pursuant to California Rules of Court, rule 7.955. Appellant shall bear his own costs on appeal.

Chaney, J., and Johnson, J., concurred.

A petition for a rehearing was denied August 3, 2011.